**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Civil Action No. 1:16-cv-08057 (DCF)(VEC)

DIONNY ESPINAL, on behalf of himself,
individually, and on behalf of all others
similarly-situated,

        **Plaintiff,**

-against-

VICTOR'S CAFÉ 52ND STREET, INC., and
SONIA ZALDIVAR, individually, and
CHRISTIAN BETERE, individually,

        **Defendants.**

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION AND COURT AUTHORIZED
NOTICE PURSUANT TO SECTION 216(B) OF THE FAIR LABOR STANDARDS ACT**

GREENBERG TRAURIG, LLP
Danielle E. Gonnella, Esq.
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Tel.: 973-443-3295
Fax: 973-295-1355
*Attorneys for Defendants Victor's
Café 52nd Street Inc., Sonia Zaldivar,
and Christian Cardenas*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 4

I.  PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION SHOULD
    BE DENIED ............................................................................................................. 4

    A.  The Applicable Standard .............................................................................. 4

    B.  Plaintiffs Have Failed to Show They Are Similarly Situated to Potential
        Opt-in Plaintiffs ........................................................................................... 6

II. IF THE COURT FINDS THAT SOME MEMBERS OF THE PROPOSED
    COLLECTIVE MAY BE SIMILARLY SITUATED, THE CLASS SHOULD BE
    NARROWLY DEFINED ........................................................................................ 12

    A.  The Proposed Time Period Is Vastly Overbroad ....................................... 12

    B.  The Proposed Scope of the Class Is Overbroad ......................................... 14

III. PLAINTIFFS' FORM OF NOTICE IS IMPROPER ............................................. 16

    A.  Plaintiffs' Proposed Notice Is Not Neutral ............................................... 16

    B.  Plaintiffs' Proposed Notice Is Misleading ................................................ 18

    C.  Plaintiffs' Request For Telephone Numbers and E-mail Addresses Is
        Improper ..................................................................................................... 19

    D.  First Class Mail Is the Best Means of Distributing The Notice and
        Consent, and Posting at the Restaurant Is Intrusive and Not Warranted .............. 20

    E.  Plaintiffs' Proposed "Reminder" Notice Is Unnecessary ......................... 21

    F.  Equitable Tolling of the Statute of Limitations Is Inappropriate ............. 21

CONCLUSION .................................................................................................................. 23

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Adair v. Wisconsin Bell, Inc.*,
  No. 08-C-290, 2008 WL 4224360 (E.D. Wisc. Sept. 11, 2008)..........................................6, 11

*Ali v. New York City Health and Hosp. Corp.*,
  No. 11-CV-6393 (PAC), 2013 WL 1245543 (S.D.N.Y. Mar. 27, 2013)..................................8

*Alvarez v. IBM Restaurants Inc.*,
  839 F.Supp.2d 580 (E.D.N.Y. 2012) ....................................................................................13

*Bah v. Shoe Mania, Inc.*,
  No. 08 Civ. 9380 (LTS)(AJP), 2009 WL 1357223 (S.D.N.Y. May 13, 2009).......................19

*Barfield v. New York City Health and Hosp. Corp.*,
  No. 05 Civ. 6319 (JSR), 2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005) ..................................4

*Benavides v. Serenity Spa NY, Inc.*,
  166 F.Supp.3d 474, 485 (S.D.N.Y. 2016) ..............................................................................13

*Bijoux v. Amerigroup, LLC*,
  No. 14cv3891 (RJD)(VVP), 2015 WL 4505835 (E.D.N.Y. July 23, 2015)............................5

*Bourtros v. JTC Painting and Decorating Corp.*,
  No. 12 Civ. 7576 (PAE), 2013 WL 3110943 (S.D.N.Y. June 19, 2013)................................11

*Bowens v. Atl. Maint. Corp.*,
  546 F.Supp.2d 55 (E.D.N.Y. 2008) ........................................................................................17

*Brooks v. Bell South Telecomm., Inc.*,
  164 F.R.D. 561 (N.D. Ala. 1995), *aff'd* 114 F.3d 1202 (11th Cir. 1997)..............................20

*Cohen v. Gerson Lehrman Group, Inc.*,
  686 F.Supp.3d 317, 331 (S.D.N.Y. 2010) ..............................................................................12

*Colozzi v. St. Joseph's Hosp. Health Ctr.*,
  595 F. Supp. 2d 200 (N.D.N.Y. 2009).................................................................................5, 19

*Crawford v. Dothan City Bd. Of Educ.*,
  214 F.R.D. 694 (M.D. Ala. 2003)...........................................................................................20

*Diaz v. Elecs. Boutique of Am. Inc.*,
  No. 04-CV-0840E (SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ..................................4

*Fasanelli v. Heartland Brewery, Inc.*,
   516 F.Supp.2d 317 (S.D.N.Y. 2007)......................................................................12

*Feng v. Hampshire Times*,
   No. 14-CV-7102 (SHS)(JLC), 2015 WL 1061973 (S.D.N.Y. Mar. 11, 2015)........................8

*Feng v. Soy Sauce LLC et. al*,
   15 CV 3058 (LB), 2016 WL 1070813 (E.D.N.Y. Mar. 14, 2016)...................................18, 19

*Flores v. Osaka Health SPA, Inc.*,
   No. 05 Civ. 962, 2006 WL 695675 (S.D.N.Y. Mar. 16, 2006) ......................................11

*Gaspar v. Pers. Touch Moving, Inc.*,
   No. 13-CV-8187 (AJN), 2014 WL 4593944 (S.D.N.Y. Sept. 15, 2014) .........................12, 13

*Gayle v. United States*,
   85 Fed. Cl. 72 (2008) .............................................................................16

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
   282 F. Supp. 2d 91 (S.D.N.Y. 2003)...............................................................12, 17

*Gordon v. Kaleida Health*,
   No. 08-CV-378S, 2009 WL 3334784 (W.D.N.Y. Oct. 14, 2009) ....................................19, 20

*Guo v. Tommy's Sushi, Inc.*,
   No. 14-CV-3964 (PAE), 2014 WL 5314822 (S.D.N.Y. Oct. 16, 2014)
   *reconsideration denied*, 14-CV-3964 (PAE), 2014 WL 7373460 (S.D.N.Y.
   Dec. 29, 2014)...................................................................................15, 22

*Guzelgurgenli v. Prime Time Specials, Inc.*,
   883 F. Supp. 2d 340 (E.D.N.Y. 2012) ...............................................................21

*Guzman v. VLM, Inc.*,
   No. 07-CV-112 (JG)(RER), 2007 WL 2994278 (E.D.N.Y. Oct. 11, 2007) ..........................17

*Hallissey v. Am. Online, Inc.*,
   No. 99-CIV-3785 (KTD), 2008 WL 465112 (S.D.N.Y. Feb. 19, 2008) ..........................17, 18

*Hamadou v. Hess Corp.*,
   915 F.Supp.2d 651 (S.D.N.Y. 2013).................................................................12

*Hoffmann v. Sbarro, Inc.*,
   982 F. Supp. 249 (S.D.N.Y. 1997) ..................................................................4

*Hoffmann-La Roche, Inc. v. Sperling*,
   493 U.S. 165 (1989)................................................................................16

*Kim v. 511 E. 5th Street, LLC,*
    985 F. Supp. 2d 439 (S.D.N.Y. 2013)..................................................................................12

*Krueger v. New York Tel. Co.,*
    No. 93-CV-0178 (LMM), 1993 WL 276058 (S.D.N.Y. July 21, 1993)................................16

*Laroque v. Domino's Pizza, LLC,*
    557 F. Supp. 2d 346 (E.D.N.Y. 2008) ................................................................................12

*Levinson v. Primedia Inc.,*
    No. 02 Civ. 2222 (CBM), 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003)..............................4

*Mark v. Gawker Media, LLC,*
    13-cv-4347 (AJN), 2016 WL 1271064 (S.D.N.Y. Mar. 29, 2016).........................................21

*Mazur v. Olek Lejbzon & Co.,*
    No. 05 Civ. 2194 (RMB) (DF), 2005 WL 3240472 (S.D.N.Y. Nov. 30, 2005).....................18

*McBeth v. Gabrielli Truck Sales, Ltd,*
    768 F.Supp.2d 396 (E.D.N.Y. 2011) ..................................................................................13

*Mendoza v. Casa de Cambio Delgado, Inc.,*
    No. 07-CV-2579 (HB), 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008) .............................5, 8, 11

*Morales v. Plantworks, Inc.,*
    No. 05 Civ. 2349 (DC), 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006).......................................4

*Nabi v. Hudson Group (HG) Retail, LLC,*
    310 F.R.D. 119 (S.D.N.Y. 2015) ...........................................................................................5

*Phillips v. Generations Family Health Ctr.,*
    723 F.3d 144 (2d Cir. 2013)................................................................................................22

*Prizmic v. Armour,*
    No. 05-CV-2503 (DLI)(MDG), 2006 WL 1662614 (E.D.N.Y. June 12, 2006).................6, 20

*Racey v. Jay-Jay Cabaret, Inc.,*
    15 Civ. 8228 (KPF), 2016 WL 3020933 (S.D.N.Y. May 23, 2016).....................................18

*Roebuck v. Hudson Valley Farms, Inc.,*
    239 F. Supp. 2d 234 (N.D.N.Y. 2002)................................................................................16

*Russell v. Wells Fargo & Co.,*
    No. C 07-3993 CW, 2008 WL 4104212 (N.D. Cal. 2008)....................................................20

*Sanchez v. JMP Ventures, LLC*
    No. 13 Civ. 7264 (KBF), 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) ...................5, 9, 14, 15

*Slamma v. API Rest. Corp.*,
  No. 12 Civ. 757 (RWS), 2013 WL 3340290 (S.D.N.Y. July 2, 2013) ...................................19

*Uddin et al. v. O'Brien Restaurant Holding Co., et al.*,
  No. 16-cv-2098 (RJS) (S.D.N.Y. November 22, 2016)........................................................14

*Velasquez v. Digital Page, Inc.*,
  No. CV 11-3892 (LDW)(AKT), 2014 WL 2048425 (E.D.N.Y. May 19, 2014)...................17

*Wallace v. Kato*,
  549 U.S. 384 (2007)..........................................................................................................22

*Yahraes v. Rest. Assoc. Events Corp.*,
  2011 WL 844963 (E.D.N.Y. Mar. 8, 2011).......................................................................22

*Zeledon v. Dimi Gyro, LLC*,
  15 cv 7301 (DF), 2016 WL 6561404 (S.D.N.Y. Oct. 13, 2016) ...........................................5

## **Statutes**

N.Y. Lab. Law § 203-d .......................................................................................................19

## **Other Authorities**

7B Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice &*
  *Procedure* § 1807 (3d ed. 2005) ........................................................................................4

## INTRODUCTION

Defendants Victor's Café 52nd Street Inc. ("Victor's Café" or the "Company"), Sonia Zaldivar ("Zaldivar") and Christian Cardenas, improperly pled as Christian Betere ("Cardenas") (collectively "Defendants"), respectfully submit this memorandum of law in opposition to the motion of plaintiffs, Dionny Espinal ("Espinal") and Jose Forero Olaya ("Olaya"), (collectively referred to as "Named Plaintiffs" or the "Plaintiffs"), individually and on behalf of all others similarly situated (the "Putative Collective"), for conditional certification and court authorized notice pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA"). As demonstrated herein, Plaintiffs' arguments in support of their motion are without merit, and thus, Plaintiffs' motion should be denied in its entirety.

## PRELIMIARY STATEMENT

Plaintiffs Espinal and Olaya, both of whom worked at Victor's Café as table bussers, commenced this action shortly after Olaya was terminated due to his erratic, violent, and insubordinate conduct. *See* Declaration of Monica Zaldivar, Exhibits B and C ("Zaldivar Decl.). Plaintiffs indicate in the memorandum in support of their motion ("Plaintiffs' Brief") that they seek to certify a broad collective consisting of "current and former non-managerial wait staff employees".

In order to succeed on their motion, Plaintiffs must demonstrate that they are similarly situated to the proposed members of the collective action.  They seek to do this by demonstrating that they were subject to a common policy compelling workers to work off the clock and/or denying them payment of minimum wage and overtime compensation.  However, the evidence submitted by Plaintiffs in support of their motion is inadequate to meet their burden, and their motion must therefore be denied.

Victor's Café maintains an express written policy applicable to and distributed to all workers that makes clear that non-exempt employees are eligible for overtime compensation, establishes specific procedures for recording time, and advises employees that they may be subject to discipline for failing to accurately report time.  Plaintiffs attempt to overcome this clear policy with vague and conclusory declarations from two Plaintiffs, asserting that they were verbally directed by one manager to work in violation of the Company's express written policy. However, those declarations are inadequate as a matter of law to establish a common practice.

For example, while Plaintiffs seek conditional certification of a group of "current and former non-managerial wait staff employees" (a definition that is broader even than that which is contained in their Complaint) (ECF No. 1 ¶ 14 and ECF. No. 18), the two Declarations proffered are both from former employees, one of which was part-time, both of whom worked only as bussers, and both for a relatively short period of time.  They both claim to have worked for a single supervisor who allegedly directed them to work off the clock in violation of Company policy. Conspicuously absent from Plaintiffs' moving papers is any evidence from any individual who worked in any capacity at Victor's Café other than a busser; who worked different shifts; or who was managed by any other supervisor.  Plaintiffs' declarations, which consist of barely two pages of nearly identical averments, offer only vague and conclusory hearsay allegations relating to runners, and do not and cannot cover any time period beyond the Plaintiffs' own brief period of employment.  At most, the Plaintiffs' Declarations indicate that a single rogue supervisor directed these two Plaintiffs to work in violation of the Company's express written policy, which said supervisor expressly denies.  The applicable case law makes clear that such allegations are inadequate as a matter of law to establish that the proposed members of the collective are similarly situated as having been subject to a common policy or plan.

For the same reasons, even if the Court were to find that Plaintiffs somehow established a common policy as to bussers working the same shifts as them, reporting to the supervisor who allegedly directed them to violate Victor Café's written policy, and employed during the time period when they were employed, the group they propose to conditionally certify is wildly overbroad and must be narrowed.

Lastly, if the Court is inclined to issue Notice in this matter, Plaintiffs' proposed notice and consent forms are defective and should be altered.

## **BACKGROUND**

On or about October 14, 2016, Plaintiff Dionny Espinal filed this action. (ECF No. 1). On or about December 27, 2016, Defendants filed their Answer to the Complaint. (ECF No. 15). On January 5-6, 2017, Plaintiffs filed their motion for conditional certification ("Plaintiffs' Motion") seeking to certify a collective of current and former non-managerial wait staff employees of Defendants who were/are not paid prevailing minimum wage or overtime. (*See* ECF Nos. 17, 18). To date no discovery has been exchanged in this matter.

In support of their application, Plaintiffs submit a declaration from Named Plaintiff Espinal ("Espinal Decl.") (attached to ECF No. 17 as Exhibit 3), who worked as a part-time busser at Victor's Café, and a declaration from Named Plaintiff Olaya ("Olaya Decl.") (attached to ECF No. 17 as Exhibit 4), who also worked as a busser at Victor's Café, and also rely on the allegations contained in the Complaint.

Plaintiffs' declarations are not sufficient to warrant certification in this case.

## ARGUMENT

## II.   PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION SHOULD BE DENIED

### A.   The Applicable Standard

It is well settled that "[p]laintiffs have the burden of demonstrating that they are 'similarly situated' to members of their proposed collective action." *Diaz v. Elecs. Boutique of Am. Inc.*, No. 04-CV-0840E (SR), 2005 WL 2654270, at *3 (W.D.N.Y. Oct. 17, 2005) (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997)). While the factual showing that plaintiffs must make at this stage is "modest", it must be "sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Hoffmann*, 982 F. Supp. 2d at 261; *see Levinson v. Primedia Inc.*, No. 02 Civ. 2222 (CBM), 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003) (denying plaintiffs' request for notice to potential class members where plaintiff failed to demonstrate that: (1) the putative class members were similarly situated; and (2) failed to support their legal conclusion with a factual showing that extended beyond their own circumstances); *Barfield v. New York City Health and Hosp. Corp.*, No. 05 Civ. 6319 (JSR), 2005 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005) (denying plaintiff's motion for conditional collective action certification under the FLSA and holding that plaintiff did not present sufficient evidence that plaintiffs were victims of a common policy or plan that violates the law); *Morales v. Plantworks, Inc.*, No. 05 Civ. 2349 (DC), 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006); *see also* 7B Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure* § 1807 (3d ed. 2005) ("Conclusory allegations are not sufficient . . . courts requir[e] that there be some factual support and affidavits showing that the class members are 'similarly situated'").

"[W]hile a plaintiff's 'burden of proof is low, it is not non-existent – certification is not automatic.'" *Sanchez v. JMP Ventures, LLC*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014) (citing *Romero v. H.B. Auto Grp.*, Inc., No. 11 Civ. 368 (CM), 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012); *Nabi v. Hudson Group (HG) Retail, LLC*, 310 F.R.D. 119, 122 (S.D.N.Y. 2015) (Judge Caproni, denying conditional certification, posited that: "the scope of the class Plaintiffs seek to certify far exceeds what can be reasonably inferred from the evidence they set forth, and therefore their Motion fails"); *Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07-CV-2579 (HB), 2008 WL 938584, at *1 (S.D.N.Y. Apr. 7, 2008) ("conclusory allegations or lack of a nexus with the putative class will prevent the case from moving forward as a collective action"). "[A]llegations of the mere existence of standardized policies and procedures are not sufficient to establish that putative plaintiffs are similarly situated to named plaintiffs, without at least some showing that putative plaintiffs are similarly situated with respect to a standardized policy that violates the FLSA." *Zeledon v. Dimi Gyro, LLC*, 15 cv 7301 (TPG)(DF), 2016 WL 6561404, at *6 (S.D.N.Y. Oct. 13, 2016)(citing *Bijoux v. Amerigroup, LLC*, No. 14cv3891 (RJD)(VVP), 2015 WL 4505835, at *3 (E.D.N.Y. July 23, 2015) The law looks to "whether the plaintiffs are similarly situated with respect to their allegations that the law has been violated." *Bijoux*, 2015 WL 4505835, at *3(internal quotations and citations omitted).

In evaluating a request for collective action certification, the Court must "take a measured approach . . . mindful of the potential burden associated with defending against an FLSA claim involving a broadly defined collective group of plaintiffs." *See Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 207 (N.D.N.Y. 2009). "Where the plaintiff has not made at least a modest factual showing that certification is appropriate, '[i]t would be a waste of the

Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated.'" *Adair v. Wisconsin Bell, Inc.*, No. 08-C-290, 2008 WL 4224360, at *4 (E.D. Wisc. Sept. 11, 2008) (quoting *Freeman v. Wal-Mart Stores, Inc.*, 256 F.Supp.2d 941, 945 (W.D. Ark. 2003)). "Absent such a showing, an employer may be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense." *Prizmic v. Armour*, No. 05-CV-2503 (DLI)(MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) (internal quotations and citation omitted).

    **B.**    **<u>Plaintiffs Have Failed to Show They Are Similarly Situated to Potential Opt-in Plaintiffs</u>**

Here, Plaintiffs have not met their burden. The limited "evidence" relied on by Plaintiffs is not sufficient to satisfy the showing required to conditionally certify the proposed group.

Defendant's employee Handbook contains the only indisputable common policy regarding the subjects at issue in this case.  The Handbook, which is issued to and signed for by every employee, contains express policies dictating overtime and time-keeping procedures.  For example, the Handbook provides:

> In accordance with the FLSA and New York State minimum wage laws, non-exempt employees are paid overtime when they work more than forty (40) hours in one week. Non-exempt, hourly employees are paid at one and one-half times their basic straight time rate for all overtime hours worked.

*See* Zaldivar Decl., Exhibit A. The Handbook further provides that "[h]abitual failure to punch in or out" may result in disciplinary action up to and including termination without warning. *Id.* at Exhibit A. Within the Handbook, a Time Clock Procedure expressly provides that employees "may clock in within 10 minutes of the start of [their] shift."  Perhaps most notably, the Handbook warns that "[t]ampering, altering, or **<u>falsifying time records . . . may result in</u>**

**disciplinary action, up to and including termination**. *Id.* at Exhibit A (emphasis added). Despite this express, clear, and consistently disseminated policy, Plaintiffs seek to establish that they and other workers were similarly-situated because they were subject to a contrary, *de facto* policy whereby they were required to work off the clock.   Yet they <u>have not identified a single other worker who was allegedly directed by the Company to work off the clock</u>, in addition to other glaring shortfalls.

Plaintiffs' declarations are a hodgepodge of conjecture and unsupported conclusions. For example:

- <u>Espinal</u>:

  - Espinal claims that it is "[his] understanding that Defendants required runner employees to work off-the-clock performing food preparation work. . . ." However, he does not provide any detail as to the basis for these claims or knowledge, except "his understanding" based upon communications he allegedly had with a single runner/busser. Conspicuously lacking is a declaration from that individual, or even details as to when or where this conversation allegedly occurred, the context of the alleged conversation, or any specifics as to the individual's employment (such as the hours/shift worked; whether he was directed to work in violation of the Company's written policy; and if so, by whom).  Most importantly, he does not even claim that that person was <u>directed</u> to work off the clock, or by whom.

  - Espinal claims the same busser/runner communicated to him that he was not paid for chopping food prior to his shifts.  Again, there is no declaration from that individual, or even details as to when or where this conversation allegedly occurred, the context of the alleged conversation, or any specifics as to the individual's employment (such as the hours/shift worked; whether he was directed to work in violation of the Company's written policy; and if so, by whom).

  - Espinal makes no allegations as to any other type of non-managerial employee.

- <u>Olaya</u>:

  - Olaya claims only that <u>he himself</u> was paid below the applicable minimum wage.

  - Olaya does not purport to have any knowledge of, and makes no mention of, any alleged practice of Victor's Café or the treatment of any other non-managerial

employees. Moreover, he provides no supportive information or documentation in support of his allegations.

- Both:

  - Both Espinal and Olaya indicate that at the start of <u>every</u> shift, <u>all bussers</u> were required to roll napkins for upcoming service. However, Espinal was a part-time employee. Neither Espinal nor Olaya worked every shift to observe the conduct of all bussers. Nor do they give any specific detail about the start times of shifts, how early they arrived, when they subsequently clocked-in, for what period of time this off-the-clock work would occur during every shift, where it would occur, or any other factual detail.

  - Neither Espinal nor Olaya claims to have worked uncompensated overtime.

  - Neither Espinal nor Olaya identifies who managed the other employees to whom they vaguely allude, nor do they identify a single individual other than themselves who was allegedly <u>directed</u> to work off the clock.

  - Both Espinal and Olaya purport to rely on alleged conversations or observations of other employees, but neither provides any factual allegations or insight as to how these individuals were paid, whether they were part-time or full-time employees, the number of hours these individuals worked in a given week, or whether they worked overtime hours, or their roles and responsibilities.

These declarations do not rise to the level of proof required under the case law to warrant certification, nor do they show a common policy or plan in violation of the FLSA. As in *Mendoza*, the "virtually identical affidavits" fail to show factual nexus with similarly situated employees. 2014 WL 1515877, at *4. *See Feng v. Hampshire Times*, No. 14-CV-7102 (SHS)(JLC), 2015 WL 1061973, at *3 (S.D.N.Y. Mar. 11, 2015) (the court denied conditional certification of a proposed broad collective of workers. In reviewing the plaintiffs' affidavits, the Court held that "[t]o meet their burden, [p]laintiffs were obligated to provide 'some probative information regarding similarly situated employees, such as their names, their duties, and their hours worked.'"); *see e.g.*, *Ali v. New York City Health and Hosp. Corp.*, No. 11-CV-6393 (PAC), 2013 WL 1245543, at *3 (S.D.N.Y. Mar. 27, 2013) (denying conditional certification where the sole basis of plaintiff's belief that there were other similarly situated class members

who worked over 40 hours per week and were not paid overtime is plaintiff's statement that he "had conversations with other [employees] about the fact that [they] worked in excess of 40 hours per week").

Notably, the alleged common policy in this case is based <u>exclusively</u> upon the alleged instruction of **<u>one specific individual</u>**, nighttime floor manager, Christian Cardenas. *See* Declaration of Christian Cardenas, ¶ 2 ("Cardenas Decl."). Plaintiffs claim that Mr. Cardenas "often threatened the bussers . . . that if [they] did not perform the off-the-clock napkin work they would be given a warning." Espinal Decl. ¶ 7; Olaya Decl. ¶ 7. However, <u>Cardenas did not become a nighttime floor manager until September 2015</u> and <u>does not/did not oversee the morning shifts</u>. *See* Cardenas Decl., ¶ 2; Zaldivar Decl., ¶ 3. **<u>There is not a single piece of evidence in the record to suggest that any other manager gave a similar instruction or that any other shift or person received such an instruction</u>**. Accordingly, Plaintiffs cannot support their claim that any individuals who worked other shifts, reported to other managers, or worked prior to September 2015 were subject to a common policy contrary to the Company's Handbook.

Plaintiffs' claims are further defeated by the brief period of their own employment. Plaintiff Espinal worked part-time, and only from May 2014 to February 2016, while Olaya worked from October 2015 to April 2016. As neither Named Plaintiff worked outside that range, and they have provided no declarations for others who did, there is no evidence in the record to suggest that *any* employee was directed to work off the clock during other periods. This is bolstered by the fact that Cardenas was not in a management role prior to September 2015, and thus could not have directed employees to work off the clock prior to that. *See Sanchez*, 2014 WL 465542 at n. 1. Indeed, there was only a period of about <u>six months</u> when Cardenas was in a management role and could have supervised Espinal and Olaya.

Additionally, the only off the clock work either of the Plaintiffs claimed to have performed is napkin rolling, which is a side-task completed by <u>only bussers</u>. Runners and other "non-managerial wait staff employees" at Victor's Café are not assigned napkin folding side work. Plaintiff Espinal's vague allegation that a single runner communicated to him that he performed off the clock work chopping onions is totally inadequate. Not only is it an isolated, hearsay conversation, but again, it does not even allege that the runner was directed to work off the clock or by whom, or any basis to suggest that other runners were also so directed. At most, plaintiffs' competent allegations and alleged observations, albeit entirely conclusory, relate only to napkin rolling by bussers on their shift during a narrow time period; there is no basis to conclude that any other non-management employees were directed to, and did in fact, work off the clock in violation of the express Company policy.

In direct contrast to the statements of Espinal and Olaya, Cesar Moreno, a bartender, who served as a busser and a runner for approximately two and a half years at Victor's Café, submits a Declaration indicating that <u>as both a busser and a runner</u> he <u>never</u> completed work prior to clocking in, and was never directed to work before clocking in. *See* Cesar Moreno Declaration, ¶¶ 1-4 ("Moreno Decl."). Moreover, Moreno indicates that he himself would have "no ability to know whether or not other bussers or runners were clocked in, since [he] only [has] access to the time keeping system for [himself]." *See* Moreno Decl., ¶ 4; Zaldivar Decl., ¶ 2. While Defendants are aware that factual disputes are not to be weighed in conjunction with this motion, several of Moreno's points are undisputed. Plaintiffs cannot speak to what occurred outside of the dates of their employment, and have not even claimed that they had access to other employees' time records. The unsupported, conclusory allegations that Espinal and Olaya <u>observed</u> other employees working and believed they were off the clock cannot be used to make

the necessary factual showing that all employees are similarly situated. *See* Zaldivar Decl. ¶ 2, and Moreno Decl. ¶ 4. Plaintiffs cannot and do not know whether or not other employees were paid minimum wage; they cannot and do not know whether or not other employees were properly paid overtime; they cannot and do not have access to other employees' time-keeping records to know whether or not they are clocked in; and they cannot and do not adequately assert a common policy or plan in violation of the FLSA contrary to that which is provided in the Handbook.  *See Adair*, 2008 WL 4224360 at *10 (internal quotations and citations omitted) (holding the named plaintiff's observations that co-workers worked overtime without pay was insufficient to establish a common policy or that co-workers were similarly situated); *see also Mendoza*, 2008 WL 938584, at *2; *Flores v. Osaka Health SPA, Inc.*, No. 05 Civ. 962 (VMKNF), 2006 WL 695675, at *3 (S.D.N.Y. Mar. 16, 2006) (denying certification and holding that plaintiffs' allegations "offer nothing of evidentiary value to support a finding that a factual nexus exists between the way the defendants allegedly compensated Flores and the way they may have compensated other employees during the relevant time period.").

Courts deny conditional certification where a plaintiff alleges claims in a vague, conclusory fashion.  *See, e.g. Bourtros v. JTC Painting and Decorating Corp.*, No. 12 Civ. 7576 (PAE), 2013 WL 3110943, at *4 (S.D.N.Y. June 19, 2013) (holding "it makes little sense to clarify a collective action based on manifestly deficient pleadings"). Here, Plaintiffs chose to seek conditional certification prior to any discovery in this action.  That choice does not relieve them of the burden to present competent evidence of an actual policy to which all members of the putative class were subject that violates the FLSA.  Having presented no evidence beyond their claim that the two Named Plaintiffs were directed by a single Night Manager to work off

the clock during the limited period of their employment and the limited period when he was a manager, they have completely failed to do so, and their Motion must be denied.

## III.   IF THE COURT FINDS THAT SOME MEMBERS OF THE PROPOSED COLLECTIVE MAY BE SIMILARLY SITUATED, THE CLASS SHOULD BE NARROWLY DEFINED

As reflected above, the potentially competent evidence that Plaintiffs have provided relates only to bussers, working the same shifts as these individuals, during the narrow time period when Espinal and Olaya were employed and Cardenas was the night shift manager.  Thus, even if the Court finds that Plaintiffs have presented sufficient evidence to conditionally certify a class, that class must be narrowly defined to align with the evidence in the record.

Yet Plaintiffs seek to certify a broad and undefined collective of _all_ non-managerial wait staff employees who were employed beginning in October 2010.  This proposed class is vastly overbroad in both time period and scope.

### A.        The Proposed Time Period Is Vastly Overbroad

First, the proposed period dating back to October 2010 far exceeds the two year statute of limitations for an FLSA claim, and is inappropriate for that reason alone.  Courts routinely limit certification to the period encompassed by the limitations period. *See, e.g., Gjurovich*, 282 F. Supp. 2d at 97-98; *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 357 (E.D.N.Y. 2008); *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187 (AJN), 2014 WL 4593944 (S.D.N.Y. Sept. 15, 2014); *Cohen v. Gerson Lehrman Group, Inc.*, 686 F.Supp.3d 317, 331 (S.D.N.Y. 2010); *Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317, 323 (S.D.N.Y. 2007); and *Kim v. 511 E. 5th Street, LLC*, 985 F. Supp. 2d 439 (S.D.N.Y. 2013).

Plaintiffs' claim that the limitations period for claims under New York state law should control the certification period is incorrect.  S*ee Hamadou v. Hess Corp.*, 915 F.Supp.2d 651,

668 (S.D.N.Y. 2013) (holding that where plaintiffs have also asserted claims under the NYLL but have not yet moved for certification of the NYLL claims, a three-year notice period is appropriate). It is well-settled that "authorizing notice to employees whose FLSA claims are untimely would amount to sending those employees 'a notice informing them that (1) there is a pending opt-in lawsuit, (2) they may not opt-in, and (3) they may later receive another notice should their status change due to certification.'" *Gaspar*, 2014 WL 4593944 at \*7 (quoting *Lujan v. Cabana Mgmt.*, No. 10-CV-755 (ILG), 2011 WL 317984, at \*9 (E.D.N.Y. Feb. 1, 2011)). As such, the growing trend is to limit the notice period to three years when plaintiffs are seeking relief under both the FLSA and NYLL. *Alvarez v. IBM Restaurants Inc.*, 839 F.Supp.2d 580, 587 (E.D.N.Y. 2012) (agreeing with the rationale in *Lujan v. Cabana Mgmt.*, 2011 WL 317984); *see e.g., McBeth v. Gabrielli Truck Sales, Ltd*, 768 F.Supp.2d 396, 400 (E.D.N.Y. 2011)(collecting cases); and *Benavides v. Serenity Spa NY, Inc.*, 166 F.Supp.3d 474, 485 (S.D.N.Y. 2016) (Limiting notice to three years after weighing both arguments as to six year and three years for notice and determining that the confusion caused to plaintiffs and the inefficiency of providing notice to plaintiffs whose claims may well be time-barred was compelling). Thus, sending notice to employees who worked prior to three years before the date any order is issued granting conditional certification would be extremely confusing. Moreover, "[a]n FLSA notice should inform opt-in plaintiffs of their right to bring FLSA claims, not advance counsel's tangential interest in certifying a class of NYLL plaintiffs who (in some cases) cannot bring FLSA claims." *Gaspar*, 2014 WL 4593944 at \*7.

Perhaps more importantly, the proposed certification period includes a period of roughly ***five years*** during which there is no evidence whatsoever in the record to suggest that a *de facto* policy contrary to the Company's Handbook existed. For most of the period the Plaintiffs seek

13

to include, the declarants were not even employed by the Company, and so cannot provide any testimony as to what policies or practices existed.  Moreover, their own declarations establish that the sole perpetrator of the alleged unlawful policy was Cardenas, who managed **only the night shift and only beginning in September 2015**.  Prior to this date, Cardenas was a server with <u>no</u> managerial responsibilities.  *See* Zaldivar Decl., ¶ 3; and Cardenas Decl., ¶¶ 2-3.

As noted above, there was a period of only about six months when Cardenas was in a managerial role and Espinal and Olaya were employed.  Based upon allegations that span only that six month period, Plaintiffs seek to certify a class that covers six years.  There is simply no evidence in the record to support that request.  *See Uddin et al. v. O'Brien Restaurant Holding Co., et al.*, No. 16-cv-2098 (RJS) (S.D.N.Y. November 22, 2016)(finding that Plaintiffs adequately alleged that the proposed collective was similarly situated and subject to a common policy or practice only with respect to distributions from a tip pool since the manager's arrival in 2015)[1].  *See also Sanchez v. JMP Ventures, LLC*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (finding the allegations of plaintiff were unsupported and conclusory, and noting that plaintiff's personal observations alone appear to cover seven months of the three-year time period for which he sought conditional certification).  Accordingly, in the event the Court decides to certify a class, it should be limited to the period of time when the declarants worked and Cardenas was a manager.

### B.      The Proposed Scope of the Class Is Overbroad

Second, the proposed scope of the class, to include all non-managerial wait staff, also far exceeds the evidence presented by Plaintiffs.  Plaintiffs have presented competent evidence only as to themselves.  Their allegations with respect to other employees are vague, unsubstantiated, and inadequate.  They do not make a single reference to any employee other than bussers and

---

[1] A copy of this Order is attached as Exhibit A to the Certification of Danielle Gonnella ("Gonnella Cert.").

runners.  As to runners, they have no first-hand knowledge, and the observations and hearsay conversations upon which they rely are vague, conclusory and lacking in critical details.  They cannot confirm that any other employee actually worked off the clock. They have no knowledge of practices relating to employees on other shifts. They do not know whether any other employee worked or was paid for overtime (and indeed, do not even alleged that they themselves did). And they do not identify a single other individual who was allegedly *directed* to work in violation of the Company's written policy.

These allegations are insufficient as a matter of law to meet even the low burden Plaintiffs face.  *See Guo v. Tommy's Sushi, Inc.*, No. 14-CV-3964 (PAE), 2014 WL 5314822 (S.D.N.Y. Oct. 16, 2014) *reconsideration denied*, 14-CV-3964 (PAE), 2014 WL 7373460 (S.D.N.Y. Dec. 29, 2014) (denying conditional certification of a proposed broad collective of hourly paid, non-managerial employees of the defendants, and granting certification to delivery persons only, which was the job title of the named plaintiffs); *see also Sanchez v. JMP Ventures, LLC*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (denying plaintiff's motion for conditional certification where the plaintiff, a delivery person, sought to certify a general collective of tipped employees, including delivery persons, bussers, runners, waiters, and bartenders employed by defendants, alleging minimum wage and overtime claims). Accordingly, if the Court were to find that Plaintiffs have met their burden to establish that *any* employees are similarly situated, such a finding should be limited to employees who worked as bussers during the time period above for which Plaintiffs provided evidence.

## IV.   PLAINTIFFS' FORM OF NOTICE IS IMPROPER

While Defendants do not believe any class should be conditionally certified, in the event the Court disagrees, we respectfully and briefly address the form of notice proposed by Plaintiffs.

Plaintiffs' version of the court authorized Notice (the "Notice") and Opt-In and Consent to Join Form (the "Consent"), a copy of which is attached to Minkoff's Declaration as Exhibit 5, is defective and therefore should be modified by this Court.

It is well-settled that "[b]oth the parties and the court benefit from settling disputes about the content of the notice before it is distributed. This procedure may avoid the need to cancel consents obtained in an improper manner." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989). Indeed, "court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Id.* Courts have held that "the form and content of the notice . . . is to be approved by the Court prior to mailing in order that present and after-the-fact disputes between counsel as to form and manner of consent may be eliminated." *Krueger v. New York Tel. Co.*, No. 93-CV-0178 (LMM), 1993 WL 276058, at *3 (S.D.N.Y. July 21, 1993) (citing *Hoffman-LaRoche*, 493 U.S. at 170).

### A.  Plaintiffs' Proposed Notice Is Not Neutral

"To conform to the requirement of judicial impartiality articulated in *Hoffman-LaRoche*, the notice should set out a neutral statement of the claims and the [defendants'] answer, without any indication of the future outcome in the case." *Gayle v. United States*, 85 Fed. Cl. 72, 81 (2008). In this regard, Plaintiffs' Notice must be modified in several respects. First, to ensure neutrality, wherever the Notice contains a description of the claims in the lawsuit, it must clearly reflect also that Defendants deny the claims. *See e.g., Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 239 (N.D.N.Y. 2002) (holding that the notice should contain a statement of defendant's position on the case). As such, a statement as to Defendants position of the case should be included wherever the Notice contains a description of the lawsuit.

Plaintiffs' Notice should also be modified to identify the Defendants' attorney on the notice form, not only the Plaintiffs' attorneys.  An individual who receives the Notice should be able to decide for him or herself whether he/she wants to direct questions concerning the lawsuit to Plaintiffs' counsel or Defendants' counsel. *See Guzman v. VLM, Inc.*, No. 07-CV-112 (JG)(RER), 2007 WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007) (holding that courts routinely require that counsel for both parties be listed on the notice form); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 99 (S.D.N.Y. 2003) (approving a form of notice which identified the defendants' counsel); *Velasquez v. Digital Page, Inc.*, No. CV 11-3892 (LDW)(AKT), 2014 WL 2048425, at *12 (E.D.N.Y. May 19, 2014) (finding defendants' request to include contact information for defendants' counsel to be reasonable and reflective of routine practices in this Circuit).

In addition, Plaintiffs' Notice should be modified to provide that any potential opt-in plaintiffs must send their consent forms to the Clerk of the Court, and not to Plaintiffs' counsel. Courts in this Circuit as well as other circuits have routinely required that consent forms be sent to the Clerk of the Court, holding that language directing potential class members to Plaintiffs' counsel for further information improperly discourages "[class members] from seeking outside counsel." *See Hallissey v. Am. Online, Inc.*, No. 99-CIV-3785 (KTD), 2008 WL 465112, at *4 (S.D.N.Y. Feb. 19, 2008); *Velasquez*, 2014 WL 2048425 at *14; *Guzman*, 2007 WL 2994278 at *9 (finding that sending forms to plaintiff's counsel "inappropriately discourages employees from seeking outside counsel" and ordering that the notice direct recipients to submit their consent forms to the Clerk of the Court, not to the plaintiffs' attorneys); *see also Bowens v. Atl. Maint. Corp.*, 546 F.Supp.2d 55, 60 (E.D.N.Y. 2008) (Recent decisions have held that failure to send Consent Forms to the Clerk improperly discourages class members from seeking outside

counsel and thus, courts have directed that Consent Forms be sent to the Clerk of the Court); *Feng v. Soy Sauce LLC et. al*, 15 CV 3058 (ENV)(LB), 2016 WL 1070813, at *6 (E.D.N.Y. Mar. 14, 2016) (Notice of pendency shall direct opt-in plaintiffs to file their consent forms with the Clerk of the Court).

### B.   Plaintiffs' Proposed Notice Is Misleading

In addition to the fact that Plaintiffs' Notice lacks neutrality, Plaintiffs' Notice is also misleading to a potential opt-in plaintiff in several respects. First, Plaintiffs' Notice does not plainly state that it is not intended to imply that the recipient of such notice would be entitled to monetary recovery.  In this regard, courts in this Circuit have permitted the inclusion of language that states "this notice does not mean that you are entitled to any monetary recovery. Any such determination must still be made by the Court."  *See Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194 (RMB) (DF), 2005 WL 3240472, at *6 (S.D.N.Y. Nov. 30, 2005) (upholding such language in Notice by consent of the parties); *see also Racey v. Jay-Jay Cabaret, Inc.*, 15 Civ. 8228 (KPF), 2016 WL 3020933, at *9 (S.D.N.Y. May 23, 2016) (upholding such language in Notice).

Plaintiffs' notice also fails to fully and accurately describe the effect of joining this case as a potential opt-in plaintiff.  For example, Plaintiffs' notice is not clear about the opt-in plaintiffs' responsibilities upon joining the lawsuit. Thus, Defendants also propose that the Notice be modified to state that: An individual who opts in to this suit may be asked to (1) respond to certain written questions; (2) sit for depositions; and/or (3) pay costs if they do not prevail.  *See Hallissey*, 2008 WL 456112 at *4 (holding that including such information on the notice is appropriate); *see also Bah v. Shoe Mania, Inc.*, No. 08 Civ. 9380 (LTS)(AJP), 2009 WL 1357223 (S.D.N.Y. May 13, 2009); *Slamma v. API Rest. Corp.*, No. 12 Civ. 757 (RWS), 2013

WL 3340290 (S.D.N.Y. July 2, 2013).   In addition, the Notice should advise potential opt-ins that Defendant may be required to provide copies of an opt-in plaintiff's personnel file or other employment related documents as part of the action so that potential opt-ins are fully aware of how the action could proceed.

### C.   Plaintiffs' Request For Telephone Numbers and E-mail Addresses Is Improper

Plaintiffs request the production of  "a list, in electronic format, of all persons employed by Defendants as non-managerial wait staff employees at any point between October 14, 2010 and the present, that includes: names, addresses, mobile and home telephone numbers, e-mail addresses, work locations, and dates of employment." Plaintiff's Brief at 15.

Plaintiffs' request for telephone numbers and email addresses of putative collective action members should be rejected. Privacy concerns militate against disclosure of this information. *See, e.g.*, N.Y. Lab. Law § 203-d ("[a]n employer shall not unless otherwise required by law: [c]ommunicate an employee's [telephone number or personal electronic mail address] to the general public."); *see Gordon v. Kaleida Health*, No. 08-CV-378S, 2009 WL 3334784, at *9 (W.D.N.Y. Oct. 14, 2009).   Moreover, "plaintiffs have no need for additional, inherently private information sought, including emails addresses [and] telephone numbers . . . .". *Colozzi*, 595 F. Supp. 2d at 201; s*ee also Feng*, 2016 WL 1070813 at *7. Rather, production of telephone numbers and email addresses should be considered *only* if Plaintiffs demonstrate that less intrusive contact information (*i.e.*, names and addresses) is insufficient to locate potential collective action members.   Because Plaintiffs have failed to do this, the request for telephone numbers and email addresses should be denied.

Moreover, to protect employees' legitimate privacy rights and expectations, in the event the Court at any time requires disclosure of employee phone numbers and email addresses,

Plaintiffs should be required to maintain that information in confidence, and use it solely for the purpose of sending notice of the pendency of this action, and not any other form of solicitation or contract.[2]

### D.       First Class Mail is the Best Means of Distributing The Notice and Consent, and Posting at the Restaurant Is Intrusive and Not Warranted

Plaintiffs also request an order directing Defendants to post Notice and Consent within the restaurant. Defendants submit that such posting is unnecessary. Defendants have not yet produced employee contact information and there is no reason, at this juncture, to assume that production will not be complete and accurate.  The only group that could be reached by such a posting is current employees, all of whom have an interest in providing their employer with an up-to-date mailing address. *See e.g., Gordon, supra*, at *11 (denying plaintiffs' request to post notice at a place of employment); *Russell v. Wells Fargo & Co.*, No. C 07-3993 CW, 2008 WL 4104212, at *5 (N.D. Cal. 2008) ("defendant, however, is unlikely to have obsolete contact information for its current employees").

Additionally, physically posting the Notice and Consent is meaningless for former employees, who will not see anything posted in the workplace. Thus, for this group, posting accomplishes nothing and the appropriate way to reach them is by mail. Plaintiffs' request to post Notice and Consent at the restaurant should be denied, as there is absolutely no basis to

---

[2] Here, Plaintiffs contend that they are entitled to such discovery but have not established that the employees are similarly situated. Thus, to the extent that Plaintiffs' motion is denied, Defendants should not be required to turn over the names, addresses, etc. of employees. Where a plaintiff brings an action pursuant to the FLSA, and seeks the names and addresses of employees in the absence of a conditionally certified collective action, courts have denied such discovery. *See Prizmic*, 2006 WL 1662614; *see also Crawford v. Dothan City Bd. Of Educ.*, 214 F.R.D. 694 (M.D. Ala. 2003) (denying such discovery as premature and holding that this approach comported with the two-step process of resolving requests for conditional certification by first making a determination of whether individuals are similarly situated based on pleadings and affidavits, and, if so, certifying the action and then permitting the defendant to move to decertify based on evidence obtained through discovery); *Brooks v. Bell South Telecomm., Inc.*, 164 F.R.D. 561, 571 (N.D. Ala. 1995), *aff'd* 114 F.3d 1202 (11th Cir. 1997).

believe that the putative collective members will not receive the Notice and Consent via first class mail.

Moreover, text messaging and e-mailing employees would serve no other legitimate purpose except to harass and bother employees. Plaintiffs have provided no reason why any means other than first class mail is necessary for notice in this case.

**E.     Plaintiffs' Proposed "Reminder" Notice Is Unnecessary**

Plaintiffs submit a proposed "reminder" to be sent to collective action members who do not opt-in after thirty days. Plaintiffs articulate no reason and make no showing that such a reminder notice is necessary here. *Guzelgurgenli v. Prime Time Specials, Inc.*, 883 F. Supp. 2d 340, 358 (E.D.N.Y. 2012) (finding that plaintiffs did not identify any reason why a reminder notice was necessary, and therefore, denied such a request). This Court should deny the request for the distribution of a proposed reminder notice as unnecessary, as it will only serve to badger individuals who are not a part of this litigation and likely be interpreted as encouragement by the Court to join this lawsuit.

**F.     Equitable Tolling of the Statute of Limitations Is Inappropriate**

Plaintiffs also request, without any justifiable reason, a tolling of the FLSA statute of limitations until the deadline for putative members to join this action.  Plaintiff relies on case law that allows for the tolling of the statute of limitations in circumstances in which it is necessary to avoid prejudice that arise from a "unique procedural posture" of such cases.  Under those cases, equitable tolling is appropriate if plaintiff "(1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Mark v. Gawker Media, LLC*, 13-cv-4347 (AJN), 2016 WL 1271064, at *7 (S.D.N.Y. Mar. 29, 2016) (denying equitable tolling of the statute of

limitations and finding delay based upon time for consideration of the conditional certification motion does not constitute extraordinary circumstances for tolling purposes); *see Wallace v. Kato*, 549 U.S. 384, 396 (2007) (equitable tolling is "a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs'); *see also Jian Guo v. Tommy's Sushi Inc.*, No. 14 Civ. 3964 (PAE), 2014 WL 5314822 (S.D.N.Y. Oct. 16, 2014) (denying equitable tolling and finding same is only appropriate in rare and exceptional circumstances where a plaintiff has been prevented in some extraordinary way from exercising his rights); and *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013) (equitable tolling is appropriate only in rare and exceptional circumstances).

In the matter at hand there has not been delay, let alone an extraordinary delay, nor has there been any other "extraordinary circumstance" that would justify the application of the equitable tolling doctrine. *See Yahraes v. Rest. Assoc. Events Corp.*, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011). Quite the contrary is true – Plaintiffs' filed a motion to conditionally certify the class <u>less than two weeks</u> after Defendants filed their Answer in this matter, and before the matter could advance to Court-ordered mediation. Plaintiffs' motion for conditional certification was certainly not delayed by Defendants, who requested a one week adjournment to file their opposition to Plaintiffs' motion, to which Plaintiffs consented. (ECF No. #). Plaintiffs' request for equitable tolling should be denied.

## **CONCLUSION**

For all the reasons set forth above, and in the accompanying Declarations and the exhibits annexed thereto, the Court should deny Plaintiffs' Motion in its entirety.

Respectfully Submitted,

*s/ Danielle E. Gonnella*
Danielle E. Gonnella
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Tel: 973-443-3295
Fax: 973-301-8410
gonnellad@gtlaw.com

Dated: January 27, 2017