# BORRELLI & ASSOCIATES

### P.L.L.C.

www.employmentlawyernewyork.com

**MEMO ENDORSED**

| | |
|---|---|
| 655 Third Avenue | 1010 Northern Boulevard |
| Suite 1821 | Suite 328 |
| New York, NY 10017 | Great Neck, NY 11021 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___6/12/2017___

June 9, 2017

<u>Via ECF Only</u>
The Honorable Valerie E. Caproni
United States District Judge for the
Southern District of New York
40 Foley Square
New York, New York 10007

Re:     *Espinal v. Victor's Café 52nd Street, Inc., et al., No.: 1:16-cv-08057 (VEC)(DCF)*

Dear Judge Caproni:

As the Court knows, we represent the named-Plaintiff, Dionny Espinal, and opt-in Plaintiff, Jose Geyder Feroro Olaya, (collectively, as "Plaintiffs"), in the above-referenced wage and hour collective and putative class action arising under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). We write per Your Honor's June 8, 2017 Order (ECF # 38) directing us to respond to Defendants' June 7, 2017 letter (ECF # 37) (hereinafter, "Letter").

In their Letter, Defendants claim that Plaintiffs have disseminated "approved and unapproved notices," and on that basis, Defendants request that this Court deny Plaintiffs' "request to send an email reminder notice to putative members of the [FLSA] collective." As an initial matter, Defendants' Letter mischaracterizes, at the least: Defendants' opposition to Plaintiff's motion for conditional certification; the Court's Order granting in part and denying in part Plaintiff's motion; what, in Defendants' view, makes the notices both "approved and unapproved"; the meet-and-confer process involved in finalizing the notices (and in Defendants filing their Letter);[1] and the practical realities inherent to circulating the notices. Distilling their

---

[1] Before making their Letter motion, Defendants' counsel called undersigned counsel once, on June 1, 2017, and left a message. Undersigned counsel returned her call on June 2, 2017, also leaving a message. No emails were exchanged explaining Defendants' concern and undersigned counsel's message was not returned. We thus had no basis to believe that Defendants had any objection to any part of the notice process. Defendants also failed to adhere to Your Honor's individual rules regarding meeting-and-

Letter, Defendants have what appear to be three main complaints about what is actually Plaintiffs' *compliance* with this Court's orders pre-dating sending the notice: (1) Defendants did not have an opportunity to revise Plaintiffs' Spanish translation of the documents; (2) by sending the English and Spanish email notices through separate messages, Plaintiffs have essentially sent two "email blasts" rather than one; and (3) the emails listed all potential class members on the "To" line rather than on the "BCC" line, which might "encourage[] forwarding of the email, discourse between collective members and other unrelated employees, [and] encourages an inappropriate dialogue." Defendants, as a result, request that the Court not permit Plaintiff to send reminder notices by email. We address each of Defendants' perplexing concerns in turn.

First, Defendants complain that they did not have an opportunity to revise Plaintiffs' translated version of the Notice and emailed documents before they were circulated to potential collective members. But Defendants neither sought nor were granted the right to do so. Indeed, in this Court's Order granting in part and denying in part Plaintiffs' motion for conditional certification, the Court granted Plaintiffs' request to disseminate the FLSA notice by email, and ordered Defendants to produce the email addresses for all putative members. ECF # 34 at 9-10. The Court also granted Plaintiffs' request to send the FLSA notice in both English and Spanish, a request that Defendants never opposed at the motion stage. Nor did Defendants reserve, in their opposition, the right to review Plaintiffs' Spanish-language translation prior to dissemination. As undersigned counsel explained to counsel for Defendants prior to receiving the FLSA collective list (and several weeks before sending out the FLSA Notice in this case), undersigned counsel's firm has retained a professional translator - - Geotext Translations - - to translate the Court-approved, re-negotiated FLSA Notice. *See* ECF # 36 (approving the revised notice documents and authorizing Plaintiff - - for the second time - - to obtain a Spanish-language translation before sending the documents). The certified translated Notice is attached hereto as **Exhibit A**. Again, Defendants never requested that this Court order Plaintiffs to permit Defendants to review the professionally-translated version of the already-approved *revised* notice after the parties met-and-conferred at the Court's instruction. Thus, the "unapproved" nature of the notices stems from Defendants never requesting or reserving the right to review the translations at any point. Accordingly, there was "no foul" - - and even were there a foul, there remains "no harm." Curiously, Defendants complain that they would have added the word "busboy" in English in parentheses to the notice because there is no Spanish equivalent of that word (which is true) - - yet Plaintiffs' email notices already *do* include the English word "busser" in quotation marks (which is the exact English word used in the final approved English version). The English and Spanish language email notices are attached hereto as **Exhibit B**. That Defendants chose to involve the Court over Plaintiffs' use of the word "busser," when

---

conferring and contacting chambers jointly *prior* to making this motion. *See* Individual Practices in Civil Cases, Rule 2.B, http://www.nysd.uscourts.gov/cases/show.php?db=judge_info&id=1343 (last accessed June 9, 2017, 12:29 p.m.).

Defendants preferred "busboy" likely represents the sort of "dispute" that informed Your Honor's Individual Practices requirement that parties meet-and-confer before raising their disputes with the Court. In sum, Defendants now ask this Court to reconsider its decision on Plaintiff's motion for conditional certification by presenting a repackaged version of the same arguments addressed at the briefing stage. For obvious reasons, this Court should deny Defendants' request for reconsideration.

Second, Defendants complain that Plaintiffs' counsel sent two email messages rather than one (*i.e.*, one English email and one Spanish email) to circulate the emailed Notice. As a practical reality, the manner and method of sending the emailed Notices mirrors that of sending the paper copies of the FLSA notice by mail. For the mailing, copies of both the English and Spanish language versions of the notice are sent as two documents, each stapled separately, in one envelope. Plaintiffs' emailed Notices are essentially the electronic equivalents of the paper notices: each email message equates to either the English language version or the Spanish language version of the emailed Notice. This is precisely the manner and method that Plaintiffs explained to the Court (and to opposing counsel) through Plaintiffs' motion for conditional certification: "A proposed subject line and body of the email, which shall contain the FLSA collective action notice as an email attachment, is attached as Exhibit 7 to the Minkoff Declaration." ECF # 18 at 24. Naturally, an email cannot contain two subject lines. Thus, by sending an email in English and an email in Spanish, precisely as referenced in Plaintiffs' motion - - which this Court granted - - two emails are required. Again, Defendants ask this court to reconsider its already decided ruling on Plaintiffs' motion for conditional certification without any underlying basis to do so.

Third, and perhaps the most confusing aspect of Defendants' Letter, Defendants claim that Plaintiffs have somehow invaded the privacy rights of the potential collective members by emailing them all on one email and copying each individual (*i.e.*, so that each recipient can see the other recipients of the email). In principle, Defendants' Letter takes umbrage with the nature and purpose of a FLSA notice itself, as in Defendants' words, the email "encourages forwarding of the email, discourse between collective members and other unrelated employees, encourages an inappropriate dialogue, and further serves to confuse the collective." Yet this specific concern (that Defendants claim "poisons the well") is one of the very reasons why courts authorize sharing the notice in the most ways possible: "[a] purpose of notice ***is to start a conversation among employees***, so as to ensure that they are notified about potential violations of the FLSA and [are] meaningfully able to vindicate their statutory rights." *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 118 (S.D.N.Y. 2015) (citing *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 564 (S.D.N.Y.2013)) (emphasis added). Defendants' letter therefore ignores the compendium of case law that confirms the broad remedial purposes of the FLSA, and explains that the purpose of FLSA notice itself is "to make as many potential plaintiffs as possible aware of this action and their right to opt in . . . .'" *Morris v. Lettire Const.,*

*Corp.*, 896 F. Supp. 2d 265, 273 (S.D.N.Y. 2012) (citing *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012)).[2]  Worse, Plaintiffs' email notice was not sent to any of the individual Defendants.  Therefore, Plaintiffs are left to wonder whether Defendants - - after learning about the notice presumably from a current employee - - have themselves engaged in any improper communication with the potential collective members given Defendants' objection to the email notices.  That is, if Defendants are attempting to negatively influence the potential collective members following dissemination of the email notice and following posting the written notices in Defendants' restaurant, a serious risk arises that "'unsupervised, unilateral communications with those potential plaintiffs can sabotage the goal of the FLSA's informed consent requirement by planting the slightest seed of doubt or worry through the one-sided, unrebutted presentation of 'facts.'" *Agerbrink v. Model Service LLC*, 2015 WL 6473005, at *3 (S.D.N.Y. Oct. 27, 2015) (quoting *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 924 (11th Cir. 2014)) (emphasis added).[3]

As a result of the above, Defendants request that this Court essentially sanction Plaintiffs for: complying with this Court's Orders; not meeting-and-conferring with Defendants regarding the translated FLSA notice or the Spanish language emailed Notice; and circulating the notice in a manner that might inadvertently promote the FLSA's broad remedial purpose and, in Defendants' words, "encourage . . . discourse" among the FLSA members.  Specifically, Defendants ask that this Court preclude Plaintiffs from emailing the reminder notice that this Court has already authorized Plaintiffs to send.  For the same reasons described above, and for the same reasons that this Court already considered when granting this prong of Plaintiff's motion for conditional certification, the Court should deny Defendants' request - - as it is well-settled that reminder notices, too, help ensure that the maximum number of potential class members are informed of their rights before their statute of limitations run. *See, e.g., Racey v. Jay-Jay Cabaret, Inc.*, 2016 WL 3020933, at *11 (S.D.N.Y. May 23, 2016) (granting leave to send reminder notices and rejecting defendant's argument that reminder notices will "badger"

---

[2] It is for this precise reason that courts do not approve of FLSA settlements containing confidentiality, non-dissemination, or most non-disparagement clauses. *See, e.g., Martinez v. Golluoglu LLC*, 2016 WL 2016474, at *1 (S.D.N.Y. Jan. 15, 2016) (quoting *Souza v. 65 St. Marks Bistro*, 2016 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015)) (". . . confidentiality provisions that impose an obligation on a settling plaintiff *to refrain from discussing any aspect of the case* or the settlement 'come into conflict with Congress' intent . . . both to advance employees' awareness of their FLSA rights and to ensure pervasive implementation of the FLSA in the workplace.'") (emphasis added).

[3] Indeed, Courts across the country "have found the danger of such coercion between employers and employees sufficient to warrant the imposition of restrictions regarding communication between defendants and potential class members." *E.E.O.C. v. Morgan Stanley & Co.*, 206 F. Supp. 2d 559, 562 (S.D.N.Y. 2002) (citing *Bublitz v. E.I. DuPont de Nemours & Co.*, 196 F.R.D. 545, 547 (S.D. Iowa 2000); *Abdallah v. Coca-Cola Co.*, 186 F.R.D. 672, 678-79 (N.D. Ga. 1999); *E.E.O.C. v. Mistubishi Motor Mfg. of Am., Inc.*, 960 F. Supp. 164, 168 (C.D. Ill. 1997)); *see also Kleiner, v. First Nat'l Bank of Atlanta*, 751, F.2d 1193, 1202 (11th Cir. 1985) ("[I]f the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive").

potential opt-in plaintiffs); *Mongiove v. Nate's Corp.*, 2016 WL 590460, at *7 (E.D.N.Y. Feb. 11, 2016) ("A reminder notice facilitates the remedial goals of the FLSA by protecting potential class members against their claims being extinguished by the running limitations period."); *Chhab v. Darden Restaurants, Inc.*, 2013 WL 5308004, at *16 (S.D.N.Y. 2013) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate.") (collecting cases).  This is true even absent any showing of a particularized need or special circumstances supporting a reminder notice. *See Mongiove*, 2016 WL 590460, at *7-8 (rejecting defendants' argument that "Plaintiffs have utterly failed to make any showing as to why a reminder notice is necessary" in favor of plaintiffs' argument that "[a] reminder notice makes sense because putative opt-in Plaintiffs' FLSA claims continue to run unless they join this action.").  And again, reminder notices are particularly important within the restaurant industry, given the judicially-accepted principle that "much of the restaurant employee population is transient and many potential plaintiffs may have changed residences since their employment [ ] began." *Bhumithanarn v. 22 Noodle Market Corp.*, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) ("given the high turnover characteristic of the restaurant industry, the Court finds that notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action."); *see also Cherif v. Sameday Delivery Corp.*, 2015 WL 5772012, at *6 (E.D.N.Y. Sept. 30, 2015) ("Given the transient nature of some workforces, email addresses and telephone numbers may be an effective way of locating employees.").

We therefore respectfully request that the Court deny Defendants' Letter request in its entirety.[4]  We thank the Court for its attention to this matter.

Defendants' motion for a conference is DENIED.  Plaintiffs are directed to address future e-mail reminders to putative collective members using the "bcc" addressing field. Defendants' request for access to past communications between Plaintiffs' counsel and the putative collective members is denied.

The Court reminds the parties that they must work collegially to resolve disputes via the meet-and-confer process without court intervention.

SO ORDERED.

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE

6/12/2017

Respectfully submitted,

Michael R. Minkoff, Esq.