USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/23/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
DIONNY ESPINAL, on behalf of himself, :
individually, and on behalf of all others similarly- :
situated, :
 :
                                  Plaintiff, :    16-CV-8057 (VEC)
 :
          -against- :    OPINION AND ORDER
 :
 :
VICTOR'S CAFÉ 52nd STREET, INC., and :
SONIA ZALDIVAR, individually, and :
CHRISTIAN BETERE, individually, :
 :
                               Defendants. :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

On July 17, 2019, Plaintiffs moved for final approval of the Parties' Class and Collective Action Settlement, authorizing the distribution of settlement checks to all Class Members who timely submitted claim forms and awarding Service Awards to the Named Plaintiff and Opt-in Plaintiffs. Dkt 81. Plaintiffs also moved for approval of $115,000 in attorneys' fees and $1,523.98 in costs. *Id.* Finally, Plaintiffs moved for $12,300 to be paid to Arden Claims Service, LLC for claims administration. *Id.* An order approving the Class and Collective Action Settlement, Service Awards for the Named Plaintiff and Opt-in Plaintiffs, and authorizing payment for claims administration was entered separately. Dkt. 85. This opinion concerns only the Motion for Attorneys' Fees and Expenses. For the following reasons, the motion is GRANTED in part and DENIED in part.

## I.    BACKGROUND

On October 14, 2016, Named Plaintiff Espinal filed this action against Defendants alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206(a) and 207(a),

1

and New York Labor Law ("NYLL"), §§ 160, 652(1), 652, 195(1), and 195(3). Dkt. 1. Plaintiffs worked as bussers and/or food runners and asserted claims against Defendant, a Manhattan restaurant, for unpaid minimum and overtime wages as well as other NYLL statutory damages. After two mediation sessions and additional negotiations, the Parties reached an agreement in principle on July 19, 2018.

The Parties ultimately agreed to settle the action on a class-wide basis for the maximum amount of $345,000 (the "Gross Settlement Fund").[1] The Net Settlement Amount is $193,676.02, representing the Gross Settlement Fund less Attorneys' Fees and Costs, Plaintiffs' Service Awards, and Claim Administrator Fees and Costs.[2] According to the Settlement Agreement, the thirty-six participating Class Members will receive an initial distribution of $53,058.78, in proportion to their claims, followed by a second distribution of $47,461.96. The remainder of the Net Settlement Amount will be distributed evenly between the National Employment Law Project, a *cy pres* designee, and the Defendants. By Order dated October 23, 2019, the Court approved the parties' Settlement Agreement, excluding the attorneys' fees and costs provisions, as fair and adequate under Federal Rule of Civil Procedure 23(e).

## II.  LEGAL STANDARD

In Rule 23 class actions, the "attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The Second Circuit has approved two methods to calculate a reasonable attorneys' fee: the "lodestar" method and the "percentage of the fund" method. *See*

---

[1]  Capitalized terms have the meaning assigned in the Settlement Agreement, Dkt. 69-1 (hereafter "Settlement Agreement").

[2]  The Net Settlement Amount will not change despite the reduced attorneys' fees awarded. As a result of the reversionary structure of the agreed-upon settlement, the difference between the requested $115,000 in attorneys' fees and the $72,450 award granted by this opinion will revert to the Defendant. Settlement Agreement ¶ 4.2.

*id*.; *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*, 396 F.3d 96 (2d Cir. 2005). Under the lodestar method, the district court multiplies the reasonable number of hours billed to the class by a reasonable hourly rate. *See Goldberger*, 209 F.3d at 47. The district court may then, in its discretion, increase the lodestar by applying a multiplier based on factors such as the riskiness of the litigation and the quality of the attorneys. *Id.* at 50. Under the percentage of the fund method, class counsel is awarded a reasonable percentage of the total value of the settlement amount. *See Goldberger*, 209 F.3d at 47. The percentage of the fund method is the "trend" in the Second Circuit because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc,* 396 F.3d at 121 (internal quotations marks omitted); *see McDaniel v. County of Schnectady*, 595 F.3d 411, 417–19 (2d Cir. 2010). Even when the percentage of the fund method is used, however, the Second Circuit "encourage[s] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50 (internal citation omitted).

Regardless of whether the percentage of the fund or the lodestar method is used, "the '*Goldberger* factors' ultimately determine the reasonableness of a common fund fee." *Wal-Mart Stores, Inc,* 396 F.3d at 121. The *Goldberger* factors include: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50. Fee awards "should be assessed based on scrutiny of the unique circumstances of each case, and 'a jealous regard to the rights of those who are interested in the fund.'" *Id.* at 53 (internal citation omitted). Furthermore, the district

court has a duty "to act as a fiduciary who must serve as a guardian of the rights of absent class members." *McDaniel*, 595 F.3d at 419.

### III. DISCUSSION

1. **Attorneys' Fees**

Consistent with the "trend in this Circuit," *Wal-Mart Stores, Inc,* 396 F.3d at 121, this Court adopts the percentage-of-the-fund method in determining Class Counsel's fee award. In determining a reasonable amount for attorneys' fees, the Court applies the *Goldberger* factors in three steps. *See McGreevy v. Life Alert Emergency Response, Inc.,* 258 F. Supp. 3d 380 (S.D.N.Y. 2017); *In re Colgate-Palmolive Co. ERISA Litig.,* 36 F. Supp. 3d 344 (S.D.N.Y. 2014). First, the Court determines a baseline reasonable fee percentage in relation to the settlement, using common fund settlements of similar magnitude and complexity as guidance. *McGreevy*, 258 F. Supp. 3d at 385. Next, the Court considers the remaining *Goldberger* factors, namely the risk to Class Counsel, the quality of representation, and other public policy concerns to determine the precise percentage of the settlement fund to award. Lastly, the Court applies the lodestar method as a cross-check, considering the amount of time reasonably spent by Class Counsel and the hourly rate charged. After considering all of the *Goldberger* factors, the Court concludes that Class Counsel is entitled to an award equal to twenty-one (21) percent of the Gross Settlement Fund.

**A. Determining a Reasonable Baseline Fee Percentage: Requested Fee in Relation to Settlement**

In comparing the amount of the requested fee to the size of the settlement, the district court must ensure that "the percentage awarded does not constitute a 'windfall.'" *Johnson v. Brennan*, 2011 WL 4357376, at *18 (S.D.N.Y. Sept. 16, 2011). The Second Circuit has noted

that the "percentage used in calculating any given fee award must follow a sliding-scale and bear an inverse relationship to the amount of the settlement" so as to avoid over-compensating attorneys "who obtain huge settlements, whether by happenstance or skill, . . . to the detriment of the class members they represent." *Wal-Mart*, 396 F.3d at 122 (quoting *In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003)).

Although Plaintiff asserts that a one-third fee is the "norm" in the Second Circuit, Pl.'s Mem. of Law at 41, his assertion is not supported by empirical data. *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d, 369, 400 (S.D.N.Y. 2013); *McGreevy*, 258 F. Supp. 3d at 385. Although fee percentage awards as high as one-third of a settlement fund are not unheard of, *see, e.g., Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *1, 5 (S.D.N.Y Mar. 31, 2009); *Strougo ex rel. Brazilian Equity Fund v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003), the percentage of the fund awarded generally falls within a range of 15% to 33%. *Donoghue v. Morgan Stanley High Yield Fund*, 2012 WL 6097654, at *2 (S.D.N.Y. Dec. 7, 2012). Empirical data shows that the median fee percentage for settlements of less than $750,000 is 29.6% and the mean fee percentage is 28.8%. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards,* 7 J. Empirical Legal Stud. 811, 835 (2010) (analyzing nearly 700 common fund settlements from 2006 and 2007); Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements*: 1993-2008, 7 J. Empirical Legal Stud. 248, 262 (2010). Data indicates that the mean percentage for fees awarded in Second Circuit class action cases between 2006 and 2011 was 26.9%. William B. Rubenstein, 5 *Newberg on Class Actions* § 15:78 (5th ed. Supp. June 2019). Finally, empirical data shows that the median fee percentage awarded for labor and employment cases is between 25% and 29% and the mean fee percentage is between 27% and

28%. *See* Fitzpatrick, *supra,* at 835; Eisenberg & Miller, *supra* at 262. In fact, several wage and hour cases decided in this District awarded only 20% of the settlement as attorneys' fees.[3] *See, e.g., Ortiz v. Chop't Creative Salad Co.,* 89 F. Supp. 3d 573, 598 (S.D.N.Y. 2015); *Sakiko Fujiwara v. Sushi Yashuda Ltd.,* 58 F. Supp. 3d 424 (S.D.N.Y. 2014). Finally, even if 33.33% were a regularly awarded fee percentage in this Circuit, the Court is well within its discretion to deviate from a "benchmark embraced by counsel." *Goldberger,* 209 F.3d at 53 (internal quotation marks omitted) (finding that the district court did not abuse its discretion simply because it deviated materially from the 11% to 19% awarded in similar cases.).

After examining cases of similar size and complexity and reviewing the extensive empirical data analyzing fee percentages awarded in this Circuit, the Court finds that the 33.33% requested by plaintiffs is an unreasonably high percentage of the settlement fund. Among FLSA cases, potentially the most complex type is a hybrid action, such as this one, "where state wage and hour violations are brought as an opt out class action pursuant to Rule 23 in the same action as the FLSA opt in collective action." *Siler v. Landry's Seafood House-North Carolina, Inc.,* 2014 WL 2945796, at *9 (S.D.N.Y. June 30, 2014). In this case, because of the early stage at which it settled, the complexity of hybrid cases was a factor only in drafting the settlement agreement and the notice to class members. Nevertheless, the potential complexity of this case might suggest a baseline fee percentage in the middle or even towards the upper end of the median fees typically awarded. *See McGreevy*, 258 F. Supp. 3d at 386. Based on the extensive empirical evidence indicating that the average fee percentage in labor and employment cases is between 27% and 28% and the average percentage of fees awarded in this Circuit is 26.9%, even for a complex FLSA case, a reasonable percentage is still far below the 33.33% requested by

---

[3] The Court acknowledges that the settlements in those cases were larger than the settlement at issue in this case.

Plaintiffs. After considering the requested fee in relation to the settlement and the complexity *vel non* of this case in light of the empirical data, the Court finds a reasonable baseline percentage in this case to be twenty-five (25) percent of the Gross Settlement Fund, or $86,250.

### B. Determining a Reasonable Fee Percentage: Risk of Litigation, Quality of Representation, and Policy Considerations

The baseline fee percentage award, in this case twenty-five percent of the Gross Settlement Fund, may be increased or decreased based on a consideration of the remaining *Goldberger* factors—the risk of litigation, the quality of representation, and any remaining policy considerations. *McGreevy*, 258 F. Supp. 3d at 386.

The Court acknowledges that Class Counsel undertook some risk in accepting the case on a contingency fee basis. *See Detroit v. Grinnell Corp.,* 495 F.2d 448, 471 (2d Cir. 1974). Contingency risk does not, however, "always compel enhanced fees." *Goldberger*, 209 F.3d at 53. Moreover, Class Counsel does not argue that there were any additional or unique risks associated with this case, beyond the risk inherent in any litigation. Thus, the risk in this case does not merit a change in the baseline percentage determined by the Court.

The quality of representation rendered in this case also does not warrant a change in either direction of the baseline percentage. Quality of representation is "best measured by results." *Goldberger*, 209 F.3d at 55. Class Counsel boldly claims that their "skill and experience was directly responsible for [the] favorable settlement reached." Pl.'s Mem. of Law at 39. While Plaintiffs claim victory for having achieved a "Gross Settlement Fund" of $345,000, the claim rate is less than twenty percent and the Settlement Agreement limited the Plaintiffs (even if the claim rate had been 100%) to an aggregate award of $193,676.02. Moreover, although Class Counsel repeatedly emphasizes the favorable reaction from Class

7

members, only thirty-six individuals submitted claim forms, out of the 185 total notices mailed. The total amount ultimately distributed to class members will be approximately $100,000. Thus, the results obtained by Class Counsel – measured in terms of dollars awarded to purportedly previously underpaid employees – are not so remarkable as to warrant an increase in the baseline fee percentage. *See e.g. Goldberger,* 209 F.3d at 55-56, *McGreevy*, 258 F. Supp. 3d at 387.

The reasonable baseline percentage may also be increased or decreased due to policy considerations. *McGreevy*, 258 F. Supp. 3d at 387; *see also In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 (2d Cir. 2014). The Second Circuit and courts in this District have taken into account the "social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation" as a basis for increasing the percentage of the fund awarded to Class Counsel. *See Johnson* 2011 WL 4357376 at *19 (internal quotation marks and citation omitted); *accord In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d at 359. On the other hand, policy considerations against the use of reversionary settlements have been grounds for reducing the baseline percentage. *See McGreevy*, 258 F. Supp. 3d at 387. Although protecting workers from wage-and-hour violations is undoubtedly in the public interest, and attorneys should be incentivized to bring such cases, Class Counsel must only be compensated for the "value they create." *Id.*

Here, the use of a reversionary settlement merits a decrease in the percentage of the settlement fund awarded to Class Counsel. Due to its reversionary structure, only a fraction of the $345,000 settlement fund in this case will be paid to class members, with a very significant portion of the unclaimed funds reverting to the defendant. As a result, the gross settlement amount of $345,000 is "inflated and illusory because it is well known that Rule 23 class

8

members participate in the monetary recovery in small percentages if the submission of a claim form is required." *McGreevy*, 258 F. Supp. 3d at 388; *see also* 2 *McLaughlin on Class Actions* § 6:24 (16th ed. Supp. Oct. 2019) ("Claims-made settlements typically have a participation rate in the 10-15[%] range."). Courts in this District have reiterated that reversionary settlements are not the only available option; class action settlements may be structured so that after deductions for attorneys' fees and expenses, all remaining settlement funds are paid out. *McGreevy*, 258 F. Supp. 3d at 387-88 ("Examples of this practice are (1) allocating available funds pro rata among all class members who submit claims after the payment of fees and expenses; (2) dispensing with the claims process entirely and sending checks to a last known address if class members are known and the amounts of their respective recoveries are assigned []; and (3) reallocating any unclaimed funds to those class members who do make claims if amounts are assigned to all class members."). Class Counsel in labor and employment cases may agree to a reversionary structure in the hopes of recovering a fee award based on a percentage of the gross settlement amount, despite knowing that a significant portion of the gross settlement will never be paid out to class members. *See McGreevy*, 258 F. Supp. 3d at 387. Although parties are entitled to structure a settlement in this way, the settlement structure must be considered when determining an appropriate percentage for attorneys' fees, particularly where, as here, there was good reason to suspect that the claims rate would be quite low and that there would be a substantial reversion.

Here, Class Counsel requests one third of the gross settlement amount, totaling $115,000. This requested amount is one hundred and fifteen (115) percent of the amount that will ultimately be distributed to class members. As explained above, after consideration of the empirical evidence and *Goldberger* factors, the Court finds a reasonable baseline percentage fee to be twenty-five (25) percent. In order to appropriately account for the significant policy

9

considerations against reversionary settlements, a further decrease of 4% of the baseline percentage is appropriate. *See McGreevy*, 258 F. Supp. 3d at 388 (finding a decrease of 5% of the reasonable baseline fee percentage was warranted due to significant policy considerations against reversionary settlements). This decrease reflects the Court's obligation to award a fee percentage "based on scrutiny of the unique circumstances of each case" as well as its responsibility to "jealous[ly]" protect the "rights of those who are interested in the fund." *Goldberger*, 209 F.3d at 53 (internal citation omitted).

Accordingly, the Court concludes that the *Goldberger* factors support an award of twenty-one (21) percent of the Gross Settlement Fund, or $72,450.

**C. Lodestar Cross-Check**

In assessing the reasonableness of a fee award, the Court may use the lodestar amount as a cross-check to the fees awarded under the percentage of the fund method. *In re Citigroup*, 965 F. Supp. 2d at 388. When the lodestar method is used as a cross-check, the Court need not exhaustively scrutinize the hours documented by class counsel; instead, "the reasonableness of the lodestar can be tested by the court's familiarity with the case. *Melito v. American Eagle Outfitters, Inc*. 2017 WL 3995619, at *19 (S.D.N.Y. Sept. 11, 2017) (quoting *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) (internal quotations omitted).

Here, Class Counsel asserts its lodestar is $79,282.50. The Court finds this number to be inflated. Procedurally, Plaintiff filed his complaint, moved for certification of a collective and then participated in mediation and settled the case. No formal discovery was taken or provided, and there was no litigation over certifying a class. Put differently, this case settled early before Plaintiff's counsel had expended significant resources, making the $79,282.50 lodestar suspect.

Class Counsel's billing records indicate that a whopping 41.3 hours were spent in connection with drafting the complaint. But this is a straightforward, single-employee case with largely boilerplate allegations. Class Counsel is an experienced plaintiff-side firm, with a self-professed extensive record of bringing FLSA class action cases in this Circuit. As a result, it is hard to believe the firm really spent 41.3 hours preparing the complaint. The billing records also indicate that Class Counsel spent approximately 24.9 hours in connection with the motion to certify the collective and 36 hours calculating damages in preparation for mediation. These totals also strike the Court as being exaggerated. As a result of these overstated hours, the asserted lodestar does not reflect a reasonable number of hours at a reasonable rate for the work done.

The $72,450 fee award calculated under the percentage of the fund method is reasonable even though it is slightly below the lodestar. This is the case because the lodestar is inflated by at least 20%. Reducing the reported lodestar by 20%, the fee awarded is 1.14 times the lodestar, which is a reasonable multiple in this case.

### 2. Costs

Class Counsel also seeks reimbursement of $1,523.98 in litigation expenses. Class Counsel's expenses include costs for filing fees, service, mailing of notices, travel, postage and PACER fees. Counsel is entitled to reimbursement of reasonable litigation expenses from the settlement fund when the expenses are "necessary and were directly related to the results achieved." *Siddiky v. Union Square Hospitality Group, LLC,* 2017 WL 2198158, at *12 (S.D.N.Y. 2017); *See, e.g., Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *23 (S.D.N.Y. Sept. 9, 2015); Fed. R. Civ. P. 23(h). The Court finds Class Counsel's expenses to be reasonable and accordingly grants Plaintiffs' motion for costs.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for fees and costs is GRANTED in part and DENIED in part. Class Counsel is hereby awarded attorneys' fees of $72,450 and reimbursement of expenses in the sum of $1,523.98. The Clerk of Court is respectfully directed to close the motion at Docket No. 81.

**SO ORDERED.**

Date: October 23, 2019
New York, NY

*[Signature: Valerie Caproni]*

**VALERIE CAPRONI**
**United States District Judge**